UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

AMUSEMENT INDUSTRY INC., doing business
as Westland Industries, a California corporation,     [ECF]
PRACTICAL FINANCE CO., INC., a California
corporation,                                          11 CIV 4416 (LAK)(GWG)

        Plaintiffs,

    -against-

BUCHANAN INGERSOLL & ROONEY, P.C., a
Pennsylvania professional corporation, STEPHEN
FRIEDMAN, an individual,

        Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x


## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT
## BUCHANAN INGERSOLL & ROONEY PC'S
## MOTION TO DISMISS THE AMENDED COMPLAINT


KAVANAGH MALONEY & OSNATO
Attorneys for Defendant Buchanan Ingersoll & Rooney PC
415 Madison Avenue
New York, NY 10017
212-207-8400

TABLE OF CONTENTS

PAGE

Table of Authorities ....................................................................................................... i

PRELIMINARY STATEMENT ..................................................................................1

STATEMENT OF ALLEGATIONS ............................................................................2

    The Parties .............................................................................................................2

    The Colonial Transaction.......................................................................................3

    The Amusement Transaction ..................................................................................4

    Release of the Amusement Funds...........................................................................8

ARGUMENT ...............................................................................................................9

POINT I    THE SECOND, THIRD, FOURTH, FIFTH, SIXTH, AND SEVENTH
            CLAIMS FOR RELIEF SHOULD BE DISMISSED AS DUPLICATIVE
            OF THE FIRST CLAIM FOR LEGAL MALPRACTICE.........................................10

POINT II   THE SECOND CLAIM FOR BREACH OF FIDUCIARY DUTY
            SHOULD BE DISMISSED .................................................................................14

POINT III  THE FOURTH AND FIFTH CLAIMS FOR FRAUDULENT INDUCEMENT
            AND CONCEALMENT AND SIXTH AND SEVENTH CLAIMS
            FOR CONSTRUCTIVE FRAUDULENT INDUCEMENT AND
            CONCEALMENT SHOULD BE DISMISSED......................................................17

    A.  Failure to Plead Reasonable Reliance................................................................18

    B.  Failure to Plead Scienter ..................................................................................23

CONCLUSION............................................................................................................26

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

Abbey v. 3F Therapeutics, Inc.,
   No. 06 CV 409, 2011 WL 651416 (S.D.N.Y. Feb. 22, 2011) .................................................15

Adamson v. Bachner,
   No. 01 Civ. 10213, 2002 WL 31453096 (S.D.N.Y. Oct. 31, 2002) ........................................11

Aglira v. Julien & Schesinger, P.C.,
   214 A.D.2d 178, 631 N.Y.S.2d 816 (1st Dep't 1995) .................................................16, 23

Alki Partners, L.P. v. Vatas Holding GmbH,
   769 F.Supp.2d 478 (S.D.N.Y. 2011).....................................................................................25

Allianz Risk Transfer v. Paramount Pictures Corp.,
   No. 08 Civ. 10420, 2010 WL 1253957 (S.D.N.Y. Mar. 31, 2010) ........................................23

Amusement Industry, Inc. v. Buchanan Ingersoll & Rooney, P.C.,
   No. 11 Civ. 4416, 2012 WL 1193353 (S.D.N.Y. Apr. 10, 2012)..............................10, 11, 12

Conklin v. Owen,
   72 A.D.3d 1006, 900 N.Y.S.2d 118 (2d Dep't 2010) ..........................................................10

Crigger v. Fahnestock and Co., Inc.,
   443 F.3d 230 (2d Cir. 2006).................................................................................................19

Curran, Cooney, Penney, Inc. v. Young & Koomans, Inc.,
   183 A.D.2d 742, 583 N.Y.S.2d 478 (2d Dep't 1992) ..........................................................19

Daniels v. Turco,
   84 A.D.3d 858, 923 N.Y.S.2d 848 (2d Dep't 2011) .............................................................10

Decker v. Nagel Rice LLC,
   No. 09 Civ. 9878, 2010 WL 2346608 (S.D.N.Y. May 28, 2010)...........................................11

Dinhofer v. Medical Liability Mut. Ins. Co.,
   92 A.D.3d 480, 938 N.Y.S.2d 525 (1st Dep't 2012) ...........................................................10

Duncan v. Pencer,
   No. 94 Civ. 0321, 1996 WL 19043 (S.D.N.Y. Jan. 18, 1996)...............................................25

Emergent Capital Inv. Management, LLC v. Stonepath Group, Inc.,
   343 F.3d 189 (2d Cir. 2003)...........................................................................................15, 19

Ernst & Ernst v. Hochfelder,
    425 U.S. 185 (1976) ...........................................................................................................23

Friedman v. Arizona World Nurseries Ltd.,
    730 F.Supp. 521 (S.D.N.Y.1990) ....................................................................................26

Giannacopoulos v. Credit Suisse,
    37 F.Supp.2d 626 (S.D.N.Y. 1999) ..................................................................................20

Gray v. Toyota Motor Sales, U.S.A., Inc.,
    806 F.Supp.2d 619 (E.D.N.Y. 2011) ...............................................................................13

Harleysville Worcestor Ins. Co. v. Hurwitz,
    No. 02 Civ. 7612, 2005 WL 774166 (S.D.N.Y. Apr. 6, 2005)................................11

I.L.G.W.U. Nat'l. Retirement Fund v. Cuddlecoat, Inc.,
    No. 01 Civ. 4019, 2004 WL 444071 (S.D.N.Y. Mar. 11, 2004) .......................16, 23

In re College Bound Consolidated Litig.,
    No. 93 Civ. 2348, 1995 WL 450486 (S.D.N.Y. July 31, 1995) ............................25

In re Wachovia Equity Securities Litigation,
    753 F.Supp.2d 326 (S.D.N.Y. 2011)................................................................................23

InKine Pharmaceutical Co., Inc. v. Coleman,
    305 A.D.2d 151, 759 N.Y.S.2d 62 (1st Dep't 2003) ..................................................11

Jana L. v. West 129th Street Realty Corp.,
    22 A.D.3d 274, 802 N.Y.S.2d 132 (1st Dep't 2005) ...................................................19

Johnston v. DeHaan,
    37 A.D.2d 1028, 325 N.Y.S.2d 762 (3d Dep't 1971) .............................................15

Kalnit v. Eichler,
    264 F.3d 131 (2d Cir.2001).................................................................................................24

Karsanow v. Kuehlewein,
    232 A.D.2d 458, 648 N.Y.S.2d 465 (2d Dep't 1996)...........................................17, 23

Kaufman v. Guest Capital, L.L.C.,
    386 F.Supp.2d 256 (S.D.N.Y. 2005)...........................................................................15

Kregos v. Associated Press,
    3 F.3d 656 (2d Cir. 1993).............................................................................................17, 23

Lama Holding Co. v. Smith Barney Inc.,
    88 N.Y.2d 413, 646 N.Y.S.2d 76 (1996) .......................................................................18

Long v. Marubeni America Corp.,
    No. 05 Civ. 0639, 2006 WL 1716878 (S.D.N.Y. June 20, 2006)............................................13

Lusk v. Weinstein,
    85 A.D.3d 445, 924 N.Y.S.2d 91 (1st Dep't 2011) ...............................................................10

Marketxt Holdings Corp. v. Engel & Reiman, P.C.,
    693 F.Supp.2d 387 (S.D.N.Y. 2010)........................................................................................18

Matsumura v. Benihana Nat'l. Corp.,
    542 F.Supp.2d 245 (S.D.N.Y. 2008).........................................................................16, 18, 23

Merrill Lynch & Co. Inc. v. Allegheny Energy, Inc.,
    500 F.3d 171 (2d Cir. 2007)....................................................................................................18

MIG, Inc. v. Paul, Weiss, Rifkind, Wharton & Garrison, L.L.P.,
    701 F.Supp.2d 518 (S.D.N.Y. 2010), aff'd, 410 Fed. Appx. 408
    (2d Cir. Feb. 18, 2011)............................................................................................................11

Miramax Film Corp. v. Abraham,
    No. 01 Civ. 5202, 2003 WL 22832384 (S.D.N.Y. Nov. 25, 2003) .........................................14

Murray Hill Investments, Inc. v. Parker Chapin Flattau & Kimpl, LLP,
    305 A.D.2d 228, 759 N.Y.S.2d 463 (1st Dep't 2003) ...........................................................11

Nelson v. Publishers Circulation Fulfillment, Inc.,
    No. 11 Civ. 1182, 2012 WL 760335 (S.D.N.Y. Mar. 7, 2012) ..............................................18

Nevelson v. Carro, Spanbock, Kaster & Cuiffo,
    290 A.D.2d 399, 736 N.Y.S.2d 668 (1st Dep't 2002) ...........................................................11

Rafter v. Liddle,
    No. 05 CV 4296, 2006 WL 2255093 (S.D.N.Y. Aug. 4, 2006) ..............................................12

RNK Capital LLC v. Natsource LLC,
    76 A.D.3d 840, 907 N.Y.S.2d 476 (1st Dep't 2010) .............................................................15

Roni LLC v. Arfa,
    77 A.D.3d 442, 903 N.Y.S.2d 352 (1st Dep't 2010) .............................................................14

Saltz v. First Frontier, LP,
    No. 10 Civ. 964, 2010 WL 5298225 (S.D.N.Y. Dec. 23, 2010)............................................23

Schlaifer Nance & Co. v. Estate of Warhol,
    119 F.3d 91 (2d Cir. 1997).....................................................................................................19

Schwartz v. Olshan Grundman Frome & Rosenzweig,
    302 A.D.2d 193, 753 N.Y.S.2d 482 (1st Dep't 2003) ...........................................................11

Sebastian Holdings, Inc. v. Deutsche Bank AG,
 78 A.D.3d 446, 912 N.Y.S.2d 13 (1st Dep't 2010) ...............................................15

Serova v. Teplen,
 No. 05 Civ. 6748, 2006 WL 349624 (S.D.N.Y. Feb. 16, 2006) .............................11

Sitar v. Sitar,
 61 A.D.3d 739, 878 N.Y.S.2d 377 (2d Dep't 2009) ...............................................19

Sonnenschine v. Giacomo,
 295 A.D.2d 287, 744 N.Y.S.2d 396 (1st Dep't 2002) .............................................11

Tiberius Capital, LLC v. PetroSearch Energy Corp.,
 No. 09 CV 10270, 2011 WL 1334839 (S.D.N.Y. Mar. 31, 2011).........................19

Troni v. Holzer,
 No. 09 Civ. 10239, 2010 WL 3154852 (S.D.N.Y. July 29, 2010) ........................18

TVT Records v. Island Def Jam Music Grp.,
 412 F.3d 82 (2d Cir.2005)......................................................................................18

Weil, Gotshal & Manges, LLP v. Fashion Boutique of Short Hills, Inc.,
 10 A.D.3d 267, 780 N.Y.S.2d 593 (1st Dep't 2004) .............................................10

Whalen v. Hibernia Foods PLC,
 No. 04 Civ. 3182, 2005 WL 1799370 (S.D.N.Y. Aug. 1, 2005) .................23, 24, 25

Wilson v. Diocese of New York of Episcopal Church,
 No. 96 Civ. 2400, 1998 WL 82921 (S.D.N.Y. Feb. 26, 1998)...............................15

Woodhams v. Allstate Fire and Cas. Co.,
 748 F.Supp.2d 211 (S.D.N.Y. 2010).......................................................................18

Wynn v. AC Rochester,
 273 F.3d 153 (2d Cir. 2001)....................................................................................18

Xie v. Lin,
 No. 06 Civ. 142, 2007 WL 423806 (S.D.N.Y. Feb. 7, 2007)............................11, 12

## PRELIMINARY STATEMENT

Defendant Buchanan Ingersoll & Rooney PC ("BIR") respectfully submits this memorandum of law in support of its motion pursuant to Federal Rules of Civil Procedure Rules 9(b) and 12(b)(6) to dismiss each of the Second through Seventh Claims for Relief alleged in the Amended Complaint.

Plaintiff's amended pleading does not cure the infirmity which caused this Court to dismiss Amusement's breach of fiduciary duty, negligent misrepresentation, and fraud claims as duplicative of the First Claim for legal malpractice in its original Complaint. Amusement Industry, Inc. v. Buchanan Ingersoll & Rooney, P.C., No. 11 Civ. 4416, 2012 WL 1193353, at **6-8 (S.D.N.Y. Apr. 10, 2012)(Docket #31). Each of these claims, along with the two new claims for constructive fraudulent inducement and concealment, are based on Defendant Freidman's alleged tortious conduct as an attorney for Amusement in the underlying transaction and each relies on the same facts and seeks the same damages as Plaintiff's legal malpractice claim. Thus, these claims should again be dismissed as duplicative.

In the alternative, if for any reason the Court does not dismiss the Second Claim for breach of fiduciary duty as duplicative, this claim should be dismissed because Plaintiff fails to allege a fiduciary relationship other than the attorney-client relationship alleged in the malpractice claim to sustain the claim. Further in the alternative, if for any reason the Court does not dismiss the Fourth through Seventh Claims for actual and constructive fraudulent inducement and concealment as duplicative, these claims should be dismissed for failure to plead reasonable reliance. The fraudulent inducement and concealment claims should also be dismissed on the additional ground of failure to plead scienter.

## STATEMENT OF ALLEGATIONS

Plaintiff alleges that Defendants BIR and Stephen Friedman ("Friedman"), a shareholder of the firm at all relevant times, represented Plaintiff Amusement Industry, Inc. ("Amusement"), a diversified family owned real estate investment, development and management company, in connection with a large real estate transaction in mid-2007 in which Amusement purportedly lost $13 million and a real estate portfolio worth $190 million. A copy of the Amended Complaint is attached as Exhibit 1 to the Declaration of David F. Bayne, Esq., dated June 12, 2012 ("Bayne Decl.") ¶27.

## The Parties

Amusement is a California corporation with its principal place of business in Long Beach, California. Id. ¶11. Amusement is a closely held diversified real estate investment, development and management corporation owned by Allen Alevy ("Alevy") and members of his family. Amusement has interests in mobile home parks, apartments buildings, shopping centers and commercial properties primarily located in Southern California. Id. ¶27.

BIR is a professional corporation organized under the law of Pennsylvania and maintains an office for the practice of law in New York City. Stephen Friedman is a citizen of the State of New York and is an attorney licensed to practice law in New York. At all relevant times alleged in the Amended Complaint, Friedman was an employee or shareholder of BIR acting within the scope of his agency and employment with BIR. Id. ¶¶12-13.

Friedman is alleged to have been a longtime, trusted friend of Allen Alevy, and also a close friend and rabbi to Alevy's son Steven Alevy. Plaintiff further alleges that Friedman represented Amusement and "the Alevy family companies" in two other real estate transactions, one of which, involving the purchase of an office building on West 79th Street in New York City,

2

was occurring during the same period as the Colonial Transaction.  Id. ¶¶3, 50.  Although Steven

Alevy signed the retainer letter with BIR for the West 79th Street transaction, Plaintiff alleges

that Steven assigned the purchase agreement to Amusement and that "BIR knew that the actual

purchasers were Amusement and another Amusement-controlled entity."   Alevy allegedly

believed that Amusement was BIR's client during the West 79th Street transaction. Id. ¶¶52-53.

**The Colonial Transaction**

  In April 2007, Mark Stern and First Republic Group Realty Corp. ("FRG Corp.") entered

into a contract with Colonial Realty Limited Partnership ("Colonial") to purchase a portfolio of

shopping centers for approximately $130 million ("Colonial Transaction").   Sometime after,

Stern caused FRG Corp. to assign the purchase agreement to a new entity called First Republic

Group LLC ("FRG LLC"), which would ultimately become the purchaser of the portfolio and

the borrower on the mortgage loan used to pay for it.  Id. ¶17.

  Plaintiff alleges that on or about May 1, 2007, Stern retained Friedman and BIR to

represent himself and FRG LLC in the deal.  Id. ¶18.  At some point, Friedman introduced Stern

to Avery Egert ("Egert") as a possible partner. Egert is alleged to have been an existing client of

BIR at the time and was also the son-in-law of real estate investor Joshua Safrin ("Safrin"), who

is also alleged to have been a client of BIR.  Id.  Thereafter, Egert, on behalf of himself and

Safrin, whom he represented, agreed to become partners in the deal with Stern and obtained their

equity in exchange for Safrin agreeing to "sponsor" the deal, which usually includes signing a

limited personal (i.e., "carve-out") guarantee.  Id. ¶¶19-20.

  Stern and FRG LLC subsequently obtained $126 million in first mortgage and mezzanine

financing from Citigroup Global Realty Corp. ("Citigroup") for the purchase of the Colonial

portfolio based in part on the fact that Safrin was a sponsor/investor and would sign carve-out

guarantees. Plaintiff alleges, upon information and belief, that Citigroup would not have made the loans without Safrin. Id. ¶¶20-21. In addition to a first mortgage on the eleven shopping center properties securing the Citigroup's main loan, Citigroup's mezzanine loan was also secured by 100% of the shares of the mezzanine borrower, First Republic Group Managing Member LLC, which owned 100% of the mortgage loan borrower, FRGR LLC. Id. ¶¶21-23.

**The Amusement Transaction**

Plaintiff alleges that the Citigroup financing did not provide sufficient funds for Stern and FRG LLC to close the Colonial Transaction. Plaintiff alleges that Friedman introduced Stern to Steven Alevy as a commercial mortgage broker hoping that Steven Alevy would persuade his father to have Amusement invest in the deal. Id. ¶28. Allen Alevy declined when the deal was first presented to him. Plaintiff alleges that in mid to late-June and early July 2007, Friedman made a number of representations to Allen Alevy to try and change his mind, including:

(a)  That the proposed 50/50 partnership between Amusement, on one side, and Stern and Safrin, on the other, was possible under the terms of the Citigroup loan agreements;

(b)  That Safrin had put up and was putting up much of the equity for the deal;

(c)  That Safrin had already put $26 million into escrow for the deal but needed to take out half his money for another real estate transaction;

(d)  That Amusement could not own 51% of the to-be-formed Stern/Safrin/Amusement partnership because if Amusement owned more than 50% Alevy would have to sign the carve out guarantees rather than Safrin;

(e)  That Friedman would "protect" the Alevy family;

(f)  That the bookkeeping, banking, and check writing functions for operation of the shopping centers would take place in Long Beach, California;

(g)  That revenues from the portfolio would be deposited into Farmers & Merchants Bank, which was Amusement's longtime California bank;

(h)     That the new partnership could terminate the existing property management company "immediately;" and

(i)      That the escrow company to which Friedman directed Amusement to wire its finds was a branch office of a national title company.

Id. ¶29.  Plaintiff alleges that Friedman's representations were false, misleading or incomplete.

Alevy eventually agreed in principle to join the venture with Stern and Safrin, but he insisted on some form of written agreement before Amusement would wire funds to Land Title Associates ("LTA").   Stern provided a signed letter of understanding ("LOU") by email dated July 2, 2007.   Plaintiff alleges that the LOU provided that "Amusement would become 50/50 partners with Stern and Safrin in the portfolio" and provided for a 7 day period during which the parties would attempt to negotiate a partnership agreement.  Id. ¶¶31-32 and Ex. A.[1]

On or about July 2, 2007, Amusement wired $13 million to the escrow account controlled by Ephraim Frenkel ("Frenkel") and LTA.  Plaintiff further alleges that it did so after Friedman had told Amusement that Citigroup was using LTA as its escrow agent in the transaction, but failed to disclose that Citigroup later decided to use a different escrow agent.  LTA is alleged to have been neither a national title company nor a national escrow company.  Instead, LTA was a series of bank accounts opened by Frenkel, who has since been indicted for his role in the Colonial Transaction.  Id. ¶¶33-34.

Plaintiff alleges that it believed BIR and Friedman were acting as its "lead lawyers" in the deal.  However, Amusement also alleges that Friedman told it that he was representing Stern and Safrin in the deal.  Plaintiff admits that it had its own in-house legal staff working on the transaction.  Id. ¶35.  One of Amusement's in-house attorneys prepared and forwarded drafts of a

---

[1]  The LOU, however, contains no reference whatsoever to Safrin.  Id. Ex. A.

partnership agreement to Friedman for review and comment.   Friedman, however, did not respond.  Id.¶36.

With no executed written partnership agreement and unclear about just how it would acquire its 50% interest in the portfolio, on or about Friday, July 6, 2007, Amusement demanded the return of its money from escrow.  Friedman, however, advised Alevy that if he withdrew the funds, he risked breaching the LOU.   The LOU provided for a 7 day negotiation period. Friedman also allegedly said Stern and Safrin would sue for $60 million, the difference between the portfolio's purchase price of approximately $130 million and its then-appraised value of $190 million.  Id. ¶37 and Ex. A.

On Monday, July 9, 2007, Plaintiff's in-house counsel asked Friedman to arrange for the Colonial purchase agreement to be assigned to Plaintiff as security for its $13 million investment.  Friedman is alleged to have "angrily" responded by saying that this "is not going to happen" and that "[i]t is beyond late in the game to even think about having the purchase agreement assigned."  Id. ¶39.  When asked how Alevy was to get his 50% interest in the deal, Friedman, Amusement's alleged "lead lawyer," did not respond.  Id. ¶¶36-39.  In fact, Friedman did respond.[2]  Friedman is also alleged to have failed to disclose at about this time that Citigroup had changed its mind about using LTA as the escrow company to hold its loan proceeds. Friedman also allegedly failed to tell Amusement that Citigroup had asked whether Stern was receiving any money at the closing.  Id. ¶40.

Amusement admits that on or about July 9, 2007 it "became more concerned about the safety of its funds."  It alleges that it, therefore, "changed its mind" about allowing Friedman to

_____

[2]   Attached to the Bayne Declaration as Exhibit 2 is a copy of the July 9, 2007 email from Friedman to Allen Sragow noting that Allen Alevy refused to sign the carve-out guarantees.

release its funds from escrow and specified that its money could only be released from escrow on the written authority of Allen Alevy or Amusement's in-house counsel Allen Sragow. Id. ¶46.

Plaintiff claims that Friedman tried to hold the deal together because he "was under great pressure from BIR to generate revenue" and if the deal fell apart he would have a much harder time generating business and getting paid. Id. ¶41. Plaintiff alleges that July 9 was also the date on which Friedman proposed a revised deal structure which he claimed protected Amusement's funds. Friedman prepared assignments, warranty deeds, and two promissory notes, one for $13 million and one for $15 million. Under the revised structure, if Stern and Safrin paid off the $13 million note, they would become 50/50 partners with Amusement in FGR LLC. If they paid off the $15 million note, then Stern and Safrin would keep the entire portfolio and Amusement would walk away. If they did not pay off either note within 60 days, then Amusement would retain 100% ownership of FGR LLC and would also own the properties directly s a result of the warranty deeds being provided to it. Id. ¶¶42-45.

Friedman assured Amusement this structure would "protect" Plaintiff's interests, and would even put Amusement in a "more secure" position than Citigroup, which was providing both a first mortgage and a secured mezzanine loan. Id. ¶¶41-45. Plaintiff also alleges that it was on or about July 9 that it asked Friedman for a copy of the Citigroup loan documents, but Friedman told Plaintiff that he did not have the documents. Id. ¶57. Amusement, a self-described sophisticated real estate company (id. ¶27), makes no allegation as to what explanation, if any, Friedman offered as to how Amusement could possibly be put in a "more secure" position than Citigroup, which had both a first mortgage on the real property and a security interest in 100% of the stock of the mezzanine borrower.

**Release of the Amusement Funds**

On or about July 12 and 13, 2007, Friedman emailed copies of various documents he had prepared in connection with the revised deal structure to Amusement.  Id. ¶47.  Although Amusement claims that it expected a promissory note from Safrin to be included in these documents, none was included.  Id.   Noticeably absent from Amusement's allegations is any claim that Amusement advised Friedman or BIR of this alleged expectation or that Amusement complained about the absence of a note from Safrin before the funds were released.

Notwithstanding that Amusement had directed on July 9, 2007 that only Allen Alevy or Allen Sragow had authority to release the funds from escrow and that their authorization had to be in writing, on July 12 Frenkel is alleged to have released a "significant portion" of Amusement's funds from escrow after having received an alleged oral release from Friedman. Amusement alleges Friedman provided a written release the following day.  In fact, however, as Plaintiff admits, on July 13, 2007, at approximately 11:19 a.m., Friedman emailed Allen and Steven Alevy and Sragow, with a "bcc" to Frenkel, that stated simply, in part, "I have all the documents," referring to the signed originally executed documents demanded by Amusement from Stern and continued "you can release the escrow."  Even though this email was addressed to Amusement, its counsel and Alevy's son, Plaintiff alleges that this email "authorized" Frenkel, who only was blind copied, to release the funds.  Friedman is alleged to have known at this time that the proposed documents would fail.  Id. ¶¶48-49.

The Colonial Transaction closed between July 11 and 13, 2007.  Plaintiff alleges Amusement failed to get what it wanted because both deals Friedman proposed--the original 50/50 partnership and the revised deal structure--were "dead on arrival" because they each violated the terms of the Citigroup loan agreements.  Further, Plaintiff alleges that the

assignments and warranty deeds were worthless and the promissory notes failed as well. Amusement did not end up owning the properties in the portfolio, owning or controlling the entities whose interests were purportedly assigned to it, and lost its $13 million investment and as much as $60 million in equity. Id. ¶¶56 and 59-61.

## ARGUMENT

A plaintiff's claim should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6) where the pleading "fail[s] to state a claim upon which relief can be granted." Fed.R.Civ.P. 12(b)(6). While a court must accept as true all of the allegations contained in a complaint, that principle does not apply to legal conclusions. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)("[A] a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."). In other words, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" and should be disregarded. Iqbal, 556 U.S. at 678.

Next, a court must determine if the complaint contains "sufficient factual matter" which, if accepted as true, states a claim that is "plausible on its face." Id. Accord Port Dock & Stone Corp. v. Oldcastle Northeast, Inc., 507 F.3d 117, 121 (2d Cir.2007)("[A] complaint must allege facts that are not merely consistent with the conclusion that the defendant violated the law, but which actively and plausibly suggest that conclusion."). As the Supreme Court explained:

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully.

Iqbal, 556 U.S. at 678 (emphasis added and internal citations omitted).  Moreover, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]'- that the pleader is entitled to relief." Id. at 679 (quoting Fed.R.Civ.P. 8(a)(2)).

## POINT I

### THE SECOND, THIRD, FOURTH, FIFTH, SIXTH, AND SEVENTH CLAIMS FOR RELIEF SHOULD BE DISMISSED AS DUPLICATIVE OF THE FIRST CLAIM FOR LEGAL MALPRACTICE

The Second, Third, Fourth, Fifth, Sixth, and Seventh Claims for breach of fiduciary duty, negligent misrepresentation, fraudulent inducement, fraudulent concealment, constructive fraudulent inducement and constructive fraudulent concealment should be dismissed as duplicative of the First Claim for legal malpractice.  Compare Bayne Decl. Ex. 1 ¶¶72-77 and ¶¶78-122.  Notwithstanding Plaintiff's conclusory allegations that these claims are being pled "in the alternative," they are each based on BIR and Friedman's alleged role as counsel for Amusement in the transaction.

As this Court has already held, "New York case law on duplicativeness … is unequivocal in directing that all claims against an attorney premised on the same facts and seeking the same relief as the malpractice claim should be dismissed." Amusement Industry, Inc. v. Buchanan Ingersoll & Rooney, P.C., No. 11 Civ. 4416, 2012 WL 1193353, at *7 (S.D.N.Y. Apr. 10, 2012).[3]  It is not the theory behind a claim that determines whether it is duplicative, but whether

---

[3]   See e.g., Dinhofer v. Medical Liability Mut. Ins. Co., 92 A.D.3d 480, 481, 938 N.Y.S.2d 525, 527 (1st Dep't 2012)(dismissing fraud claim as duplicative of malpractice claim); Lusk v. Weinstein, 85 A.D.3d 445, 924 N.Y.S.2d 91 (1st Dep't 2011)(breach of fiduciary duty); Daniels v. Turco, 84 A.D.3d 858, 923 N.Y.S.2d 848 (2d Dep't 2011)(fraud); Conklin v. Owen, 72 A.D.3d 1006, 1007, 900 N.Y.S.2d 118, 119 (2d Dep't 2010)(negligent misrepresentation); Weil, Gotshal & Manges, LLP v. Fashion Boutique of Short Hills, Inc., 10 A.D.3d 267, 270, 780

the plaintiff seeks the same relief based on the same conduct on which the malpractice claim is based that is determinative. MIG, Inc. v. Paul, Weiss, Rifkind, Wharton & Garrison, L.L.P., 701 F.Supp.2d 518, 532 (S.D.N.Y. 2010)(quoting Nevelson v. Carro, Spanbock, Kaster & Cuiffo, 290 A.D.2d 399, 400, 736 N.Y.S.2d 668, 670 (1st Dep't 2002)), aff'd, 410 Fed. Appx. 408 (2d Cir. Feb. 18, 2011); Harleysville Worcestor Ins. Co. v. Hurwitz, No. 02 Civ. 7612, 2005 WL 774166, at *5 (S.D.N.Y. Apr. 6, 2005).

In MIG, Inc., plaintiff argued that the breach of fiduciary duty claim derived from the law firm's breach of duties of loyalty and honesty, but the Court held that that was insufficient to salvage the claim because plaintiff's breach of fiduciary duty claim was "premised on the same conduct and seeks the same relief as its 2004 malpractice claim" and was thus barred under New York law. MIG, Inc., 701 F.Supp.2d at 532 (cited in Amusement Industry, Inc. 2012 WL 1193353, at *6).

Similarly, in Xie v. Lin, No. 06 Civ. 142, 2007 WL 423806, at *4 (S.D.N.Y. Feb. 7, 2007), the Court stated that "[a]lthough Xie's opposition motion (and to a lesser extent, his complaint) is littered with allegations of fraud, these allegations arise out of the same conduct

---

N.Y.S.2d 593, 596 (1st Dep't 2004)(breach of fiduciary duty); Murray Hill Investments, Inc. v. Parker Chapin Flattau & Kimpl, LLP, 305 A.D.2d 228, 759 N.Y.S.2d 463, 464 (1st Dep't 2003)(fraud and fiduciary breach); InKine Pharmaceutical Co., Inc. v. Coleman, 305 A.D.2d 151, 759 N.Y.S.2d 62, 63 (1st Dep't 2003) (breach of fiduciary duty); Schwartz v. Olshan Grundman Frome & Rosenzweig, 302 A.D.2d 193, 199 200, 753 N.Y.S.2d 482, 487 (1st Dep't 2003)(negligent misrepresentation); Sonnenschine v. Giacomo, 295 A.D.2d 287, 288, 744 N.Y.S.2d 396, 398 (1st Dep't 2002)(breach of fiduciary duty and intentional and negligent misrepresentation). Accord Decker v. Nagel Rice LLC, No. 09 Civ. 9878, 2010 WL 2346608, at *7 (S.D.N.Y. May 28, 2010)(dismissing, inter alia, breach of fiduciary duty claim as duplicative of legal malpractice claim); Serova v. Teplen, No. 05 Civ. 6748, 2006 WL 349624, at *4 (S.D.N.Y. Feb. 16, 2006)(dismissing, inter alia, claims for breach of fiduciary duty, common law fraud, and negligent misrepresentation as duplicative of legal malpractice claim); Adamson v. Bachner, No. 01 Civ. 10213, 2002 WL 31453096, at *3 (S.D.N.Y. Oct. 31, 2002)(dismissing fraud claim based on failure to disclose potential conflict relationship as duplicative of the malpractice claim).

that forms the basis of Xie's legal malpractice claim. Under New York law, the fraud claim in these circumstances is considered duplicative of the malpractice claim, and thus, must be dismissed." 2007 WL 423806, at *4 (cited in <u>Amusement Industry, Inc.</u> 2012 WL 1193353, at *6). <u>Accord</u> <u>Rafter v. Liddle</u>, No. 05 CV 4296, 2006 WL 2255093, at *9 (S.D.N.Y. Aug. 4, 2006)("It is well-settled New York law that where a fraud claim arises out of the same conduct that forms the basis for a legal malpractice claim, the fraud claim is deemed duplicative of the malpractice claim and must be dismissed.").

Each of Plaintiff's Second through Seventh Claims are premised on Defendant Freidman's alleged conduct as Amusement's attorney, and each relies on the same facts and seeks the same damages as the legal malpractice claim. Each of the claims repeats and realleges the prior allegations of Amusement's claims that Friedman had been its attorney prior to the Colonial Transaction, was its attorney in the Colonial Transaction and was also representing it concurrently in another unrelated transaction. Bayne Decl. Ex. 1 ¶¶35, 50, 78, 84, 93, 99, 108, and 115. The malpractice claim seeks damages of not less than $13 million for the loss of the money in escrow "and as much as $60 million plus interest" for the alleged loss of their equity among other things. Bayne Decl. Ex. 1 ¶76. Each of the Second through Seventh Claims thereafter seek either the lost profits and/or the $13 million and $15 million notes sought in the malpractice claim. Bayne Decl. Ex. 1 ¶¶76, 82, 91, 97, 106, 113, and 121.

It is Friedman's alleged role as Amusement's attorney that provides the basis for each of Amusement's claims. This is not a case in which Friedman's allegedly tortious conduct in the Colonial Transaction arose in some capacity other than as a lawyer, such as a trustee or some other professional role. Friedman's alleged failure to provide Amusement with the Citigroup loan documents, to advise Amusement of certain deal points insisted upon by Citigroup, his

alleged creation of a deal structure which is alleged to have been intended to make Amusement "more secure" than Citigroup, his alleged release of the escrow money, all stem from the claim that he was acting as Amusement's attorney.   Amusement's pleading indeed emphasizes Friedman's alleged role as its attorney and claims that it relied on Friedman as its counsel because its own in-house attorneys were allegedly not competent to handle a simple loan transaction:

> Although Amusement believed that BIR and Friedman also represented it in the deal, Amusement used its in-house legal staff where it could to save on fees. Amusement's in house lawyers, however, could only do so much.   <u>The Amusement attorneys were not in New York, had limited transactional experience, and had no experience in deals of this size or complexity.  Moreover, Friedman was the only attorney with access to the key deal-related documents and players.  In short, Amusement believed Friedman was acting as its lead lawyer with its in-house staff helping where they could.</u>

Bayne Dec.  Ex. A ¶35 (emphasis added).

Amusement struggles to avoid dismissal of each of these claims a second time by alleging them "[i]n the alternative, and if no attorney-client relationship between Amusement and Defendants in the Colonial Transaction is found to have existed…"  Decl. Ex. 1 ¶¶79, 85, 94, 100, 109 and 116.   However, merely because a plaintiff is permitted to plead in the alternative under Rule 8 of the Federal Rules of Civil Procedure does not mean that the plaintiff can avoid the duplicative rule requiring dismissal of claims based on the same facts and seeking the same damages as that sought in a legal malpractice claim.  <u>E.g.</u>, <u>Gray v. Toyota Motor Sales, U.S.A., Inc.</u>, 806 F.Supp.2d 619, 624 (E.D.N.Y. 2011)("Plaintiffs' argument that this claim is merely an alternative theory of their case is unavailing; the claims are not 'in the alternative' when they are based on the exact same allegations."); <u>Long v. Marubeni America Corp.</u>, No. 05 Civ. 0639, 2006 WL 1716878, at *1 (S.D.N.Y. June 20, 2006)("Here, despite plaintiffs' effort to assert that the two claims arise from different facts, the claims clearly arise from the same

contract and the same breach, and seek essentially the same relief …. Contrary to plaintiffs'
argument, this is not a matter of pleading inconsistent or alternative causes of action, which
plaintiffs are entitled to do under the Federal Rules of Civil Procedure. It is a matter of pleading
duplicative claims for breach of contract under New York law."); Miramax Film Corp. v.
Abraham, No. 01 Civ. 5202, 2003 WL 22832384, at *14 (S.D.N.Y. Nov. 25, 2003)("The claims
are impermissibly duplicative … '[T]he alternative pleading rule does not permit a plaintiff to
treat fraud and contract as interchangeable claims").

Therefore, the Second, Third, Fourth, Fifth, Sixth, and Seventh Claims for Relief should
be dismissed.

## POINT II

## THE SECOND CLAIM FOR BREACH OF FIDUCIARY
## DUTY SHOULD BE DISMISSED

In the alternative, if the Second Claim for breach of fiduciary duty is not dismissed as
duplicative of the malpractice claim for any reason, then it should be dismissed because Plaintiff
fails to allege a fiduciary relationship other than the attorney-client relationship in the Colonial
Transaction to sustain the claim.  Plaintiff, therefore, seeks to premise this claim on some other
type of relationship.   It is respectfully submitted, however, that Plaintiff alleges no such
relationship upon which a fiduciary relationship may be based.  Therefore, the Second Claim for
Relief should be dismissed for failure to state a claim upon which relief can be granted.

Plaintiff alleges Friedman's history as a longstanding friend of the Alevy family forms
the basis of this claim.  Bayne Decl. Ex. 1 ¶¶79, 85, 100, 109 and 116.  The courts, however,
have consistently held that friendship alone cannot establish a fiduciary relationship or create a
basis for reasonable reliance in a business transaction.  E.g., Roni LLC v. Arfa, 77 A.D.3d 442,
444, 903 N.Y.S.2d 352, 355 (1st Dep't 2010)("Plaintiffs also allege that the promoter defendants

'play[ed] upon the cultural identities and friendship' of the Israeli investors, but personal connections of that sort alone between parties to business transactions do not establish a fiduciary relationship."); Wilson v. Diocese of New York of Episcopal Church, No. 96 Civ. 2400, 1998 WL 82921, at *11 (S.D.N.Y. Feb. 26, 1998)("'[F]riendship alone does not establish a confidential relationship.'")(quoting Johnston v. DeHaan, 37 A.D.2d 1028, 1029, 325 N.Y.S.2d 762, 764 (3d Dep't 1971)); see also Emergent Capital Inv. Management, LLC v. Stonepath Group, Inc., 343 F.3d 189, 196 (2d Cir. 2003)("Given the sophistication of this financial transaction and of the parties, and absent any allegation of a fiduciary relationship, the personal friendship between Waldron and Hansen does not make appellant's reliance on the alleged extra-contractual representations reasonable."); Abbey v. 3F Therapeutics, Inc., No. 06 CV 409, 2011 WL 651416, at *13 (S.D.N.Y. Feb. 22, 2011)("[A]bsent a fiduciary relationship, a personal friendship does not render reasonable reliance on oral representations, without any further investigation."); Kaufman v. Guest Capital, L.L.C., 386 F.Supp.2d 256, 271 (S.D.N.Y. 2005)("Given Kaufman's level of financial sophistication and absent any allegation of a fiduciary relationship, any purported friendship between Thau and Kaufman does not transform Kaufman's reliance into 'justifiable' reliance.").

Amusement also alleges that a fiduciary relationship existed because BIR and Friedman "had superior expertise and knowledge about the Colonial Transaction...." Bayne Decl. Ex. 1 ¶79. However, specialized or superior knowledge alone, particularly in a business context, is not sufficient in and of itself to create a fiduciary duty. Sebastian Holdings, Inc. v. Deutsche Bank AG, 78 A.D.3d 446, 447, 912 N.Y.S.2d 13 (1st Dep't 2010); RNK Capital LLC v. Natsource LLC, 76 A.D.3d 840, 842, 907 N.Y.S.2d 476, 478 (1st Dep't 2010) (without more, a

defendant's superior knowledge of an investment does not create a fiduciary relationship, "especially given that plaintiffs themselves are highly sophisticated business entities").

Amusement also alleges that its attorney-client relationship in an entirely unrelated transaction with BIR and Friedman is sufficient to support the imposition of a fiduciary duty upon them in the Colonial Transaction. Bayne Decl. Ex. 1 ¶79. Plaintiff, however, admits that Friedman disclosed that BIR was representing Stern, with whom Amusement was negotiating, and further admits that it was represented by its own in-house counsel in the Colonial Transaction. Id. ¶35. Nonetheless, Plaintiff alleges that Friedman should have advised Amusement that "its interests in the deal were potentially adverse to Stern's and Safrin's...." Id. ¶80. However, in addition to admitting that it was a sophisticated real estate investor represented by counsel, Plaintiff also admits in its pleading that it insisted on having a written agreement with Stern before placing its money in escrow and later admits that Friedman told Amusement that Stern would sue it if Amusement breached the LOU. Id. ¶¶27, 31-32, 35 and 37. Clearly, Plaintiff knew its interests were adverse to those of Stern.

Thus, Plaintiff's own allegations negate any basis for the degree of trust and confidence required to create a fiduciary relationship that would make it reasonable to rely on the alleged statements or alleged omissions of Friedman without any independent verification. I.L.G.W.U. Nat'l. Retirement Fund v. Cuddlecoat, Inc., No. 01 Civ. 4019, 2004 WL 444071, at *3 (S.D.N.Y. Mar. 11, 2004)("'[i]t is a well-settled principle that neither a party nor his attorney may justifiably rely on the legal opinion or conclusions of his or her adversary's counsel.'")(quoting Aglira v. Julien & Schesinger, P.C., 214 A.D.2d 178, 185, 631 N.Y.S.2d 816, 820 (1st Dep't 1995)).   Accord Matsumura v. Benihana Nat'l. Corp., 542 F.Supp.2d 245, 256 (S.D.N.Y. 2008)("Courts have routinely held that it is unreasonable for a party 'to rely on the advice of

16

adversary counsel ... when both parties are aware that adverse interests are being pursued.'")(quoting Kregos v. Associated Press, 3 F.3d 656, 665 (2d Cir. 1993)); Karsanow v. Kuehlewein, 232 A.D.2d 458, 458-59, 648 N.Y.S.2d 465, 466 (2d Dep't 1996).

Therefore, the Second Claim for Relief should be dismissed.

**POINT III**

**THE FOURTH AND FIFTH CLAIMS FOR FRAUDULENT INDUCEMENT AND CONCEALMENT AND SIXTH AND SEVENTH CLAIMS FOR CONSTRUCTIVE FRAUDULENT INDUCEMENT AND CONCEALMENT SHOULD BE DISMISSED**

In the alternative, if the Fourth and Fifth Claims for fraudulent inducement and concealment and the Sixth and Seventh Claims for constructive fraudulent inducement and concealment, respectively, are not dismissed as duplicative of the legal malpractice claim, then they should be dismissed pursuant to Federal Rules of Civil Procedure 9(b) and 12(b)(6) because Plaintiff has failed to state a claim upon which relief can be granted and has failed to plead fraud with particularity. To avoid dismissal as being duplicative of the malpractice claim, Plaintiff alleges these claims do not require the court to assume that BIR and Friedman were Amusement's counsel in the Colonial Transaction. Bayne Decl. Ex. 1 ¶¶94, 100, 109, and 116. However, as discussed below, this does not save the claims because each of them fails to plead reasonable reliance and the fraudulent inducement and concealment claims additionally fail to plead scienter against BIR and Friedman.

In addition to the foregoing arguments, the Fifth, Sixth and Seventh Claims for Fraudulent Concealment, Constructive Fraudulent Inducement and Constructive Fraudulent Concealment also fail because they are premised on the alleged fiduciary duty owed by Defendants to Plaintiff. Id. ¶¶99-100, 108-09 and 115-16. As such, they are duplicative of Plaintiff's breach of fiduciary duty claim and should be dismissed.

17

"Under New York law, to state a claim for fraud a plaintiff must demonstrate: (1) a misrepresentation or omission of material fact; (2) which the defendant knew to be false; (3) which the defendant made with the intention of inducing reliance; (4) upon which the plaintiff reasonably relied; and (5) which caused injury to the plaintiff." Wynn v. AC Rochester, 273 F.3d 153, 156 (2d Cir. 2001)(citing Lama Holding Co. v. Smith Barney Inc., 88 N.Y.2d 413, 646 N.Y.S.2d 76 (1996)); Woodhams v. Allstate Fire and Cas. Co., 748 F.Supp.2d 211, 221 (S.D.N.Y. 2010). Where a plaintiff pleads fraud by concealment, "it must prove additionally that the plaintiff had a duty to disclose the concealed fact." Merrill Lynch & Co. Inc. v. Allegheny Energy, Inc., 500 F.3d 171, 181 (2d Cir. 2007); TVT Records v. Island Def Jam Music Grp., 412 F.3d 82, 90–91 (2d Cir.2005). Constructive fraud requires establishing the above fraud elements -- including reasonable reliance -- except that scienter is replaced by a fiduciary or confidential relationship between the parties. Nelson v. Publishers Circulation Fulfillment, Inc., No. 11 Civ. 1182, 2012 WL 760335, at *8 (S.D.N.Y. Mar. 7, 2012); Marketxt Holdings Corp. v. Engel & Reiman, P.C., 693 F.Supp.2d 387, 395-96 (S.D.N.Y. 2010); Troni v. Holzer, No. 09 Civ. 10239, 2010 WL 3154852, at *3 (S.D.N.Y. July 29, 2010); Matsumura v. Benihana Nat'l. Corp., 542 F.Supp.2d 245, 256 (S.D.N.Y. 2008).

### A.   Failure to Plead Reasonable Reliance

Plaintiff has not alleged that Friedman misrepresented or concealed anything to it that Amusement could not have discovered by making a simple inquiry and investigation using ordinary intelligence. "To adequately plead reasonable reliance, a plaintiff must show that its 'reliance was justifiable, both in the sense that the party claiming to have been defrauded was justified in believing the representation and that he was justified in acting upon it.' The court makes this determination on a motion to dismiss by 'consider[ing] the entire context of the

transaction, including ... the sophistication of the parties.' '[I]f the plaintiff has the means of knowing, by the exercise of ordinary intelligence, the truth, or the real quality of the subject of the misrepresentation, he must make use of those means.'" Tiberius Capital, LLC v. PetroSearch Energy Corp., No. 09 CV 10270, 2011 WL 1334839, at *9 (S.D.N.Y. Mar. 31, 2011)(citations omitted). Accord Emergent Capital Inv. Management, LLC v. Stonepath Group, Inc., 343 F.3d 189, 195 (2d Cir. 2003)(affirming dismissal of plaintiff's fraud claims because of lack of reasonable reliance on the alleged misrepresentations or omissions in light of the sophistication of the financial transaction and the parties).

The Second Circuit has held that a "plaintiff cannot close his eyes to an obvious fraud, and cannot demonstrate reasonable reliance without making inquiry and investigation if he has the ability, through ordinary intelligence, to ferret out the reliability or truth about an investment." Crigger v. Fahnestock and Co., Inc., 443 F.3d 230, 234 (2d Cir. 2006). Further:

> Put another way, if the plaintiff "has the means of knowing, by the exercise of ordinary intelligence, the truth, or the real quality of the subject of the representation, he must make use of those means, or he will not be heard to complain that he was induced to enter into the transaction by misrepresentations." [Mallis v. Bankers Trust Co., 615 F.2d 68, 80-81 (2d Cir. 1980)].

Schlaifer Nance & Co. v. Estate of Warhol, 119 F.3d 91, 98 (2d Cir. 1997). Accord Sitar v. Sitar, 61 A.D.3d 739, 742, 878 N.Y.S.2d 377, 380 (2d Dep't 2009)("A plaintiff is expected to exercise ordinary diligence and may not claim to have reasonably relied on a defendant's representations where he has 'means available to him of knowing, by the exercise of ordinary intelligence, the truth or the real quality of the subject of the representation.'")(quoting Curran, Cooney, Penney, Inc. v. Young & Koomans, Inc., 183 A.D.2d 742, 743, 583 N.Y.S.2d 478, 479 (2d Dep't 1992)); Jana L. v. West 129th Street Realty Corp., 22 A.D.3d 274, 278, 802 N.Y.S.2d 132, 135 (1st Dep't 2005)("Associates had, at the very least, a duty to inquire. If nothing else, the

'exercise of ordinary intelligence' suggests a simple inquiry by Associates at closing as to whether West Realty had any knowledge of any incidents that might implicate the indemnification clause of the agreement signed by Associates").

As stated in Giannacopoulos v. Credit Suisse, 37 F.Supp.2d 626 (S.D.N.Y. 1999), the courts cannot protect individuals from "unprotected trust":

> This is not to say that Mr. Giannacopoulos was irrational to have relied on the apparent fact that Credit Suisse vouched for Ergis. Such behavior even may have been customary, as Mr. Giannacopoulos maintains. Custom is not always the legal standard of when the law protects reliance, however, in part because many customs envision some amount of risk and unprotected trust. We often rely on those we trust without question, recognizing that the trust leaves us vulnerable; we often act on insufficient information to seize fleeting opportunities that are worth the risk. Trust and risk entail vulnerability, even though they are customary practices; it is not always the custom to double-check everybody and everything. The custom of unprotected trust surely exists in this financial community just as it exists in everyday life. The standard for legal protection of reliance, however, is higher. Parties cannot demand judicial protection when they could have protected themselves with a reasonable inquiry into any misrepresented facts.

37 F.Supp.2d at 633 (emphasis added).

Plaintiff alleges that Friedman misrepresented Safrin's role in the transaction, misrepresented what was permitted under the Citigroup loan documents and misrepresented that LTA was a branch of a national title office.  Bayne Decl. Ex. 1 ¶94(a) through (k).  Plaintiff also alleges that Friedman concealed information about Safrin and Safrin's son-in-law Egert from Plaintiff, concealed information about Citigroup and its loan, concealed information about LTA and Frenkel.  Bayne Decl. Ex. 1 ¶101(a) thought (w).  Each of these alleged misrepresentations and omissions were easily verifiable using ordinary intelligence by a party represented by counsel.  If Safrin's participation in the transaction was in fact "material" to Amusement, then nothing prevented Allen Alevy from simply picking up the telephone to introduce himself to Safrin and discussing their respective roles and those of their family members in the deal.

Amusement makes no allegation that it made any effort to contact Safrin directly prior to July 13, and the LOU, which it alleges it insisted upon before wiring its money to LTA, contains no reference to Safrin whatsoever. Id. ¶31 and Ex. A.

Indeed, Plaintiff even goes so far as to misrepresent the LOU in its pleading by alleging that it reflects "Friedman's representation that Amusement would become 50/50 partners with Stern and Safrin in the portfolio." Id. (emphasis added). This Court need not accept allegations which are flatly contradicted by documents annexed to Plaintiff's own pleading.

Similarly, Plaintiff also alleges that Friedman "concealed" from Amusement that the various deal points being discussed were prohibited by the Citigroup loan documents. Id. ¶¶25-26, 30, 57, 101(q) and 110.

Plaintiff alleges that it was not in a position to know that the structure Friedman was proposing violated the Citigroup loan documents because when it asked Friedman to provide it with the Citigroup loan documents, he told Amusement that he did not have them. Id. ¶57. Amusement, however, professes to be a sophisticated real estate investor. Id. ¶27. Amusement, therefore, alleges no factual basis on which it could reasonably believe that Friedman could know whether the structure was viable under Citigroup's loan documents.

Amusement, which admits to having its own in-house counsel working on the transaction, should have sought the loan documents itself, and, indeed, should have known that any money it provided to the deal would be subordinated to Citigroup's secured loans. Although Amusement attempts to downplay the sophistication of its in-house counsel (Id. ¶35), one of these attorneys, Allen Sragow, is counsel to Amusement in this complex litigation as well as the related Amusement v. Stern litigation (07 Civ. 11586(LAK)(GWG)). Mr. Sragow has represented to this Court that he has been admitted to practice law in New York since 1993.

Affidavit of Allen P. Sragow, Esq. in Support of the Motion to Admit Craig H. Missakian, Esq., Pro Hac Vice, sworn to November 23, 2011 (Docket #22).

There was nothing preventing Amusement from contacting Citigroup, Herrick Feinstein, which was closing the Citigroup loans for the borrowers, Stern or Safrin and requesting the loan documents from any of them if Friedman was unable to provide the documents to Amusement. Plaintiff does not allege that it made any effort to do so. In fact, Amusement makes no allegation of what, if anything, it did to satisfy itself that its participation in the Colonial Transaction, which involved it obtaining a contingent interest in acquiring 100% of the properties and entities securing Citigroup's $126 million loan, satisfied Citigroup's requirements for its financing.

The alleged misstatements and omissions concerning Frenkel and LTA were also easily verifiable if Amusement had bothered to do anything to investigate the party to which it was directed to wire $13 million. For example, the claim that Friedman told Amusement that LTA was a branch of a national title company (Bayne Decl. Ex. 1 ¶94(k)), could have been easily verified by calling the national title company. Plaintiff makes no claim of doing so.

The fraudulent concealment, constructive fraudulent inducement and constructive fraudulent concealment claims also fail as a matter of law because Amusement had no basis to rely on Friedman's statements in the absence of an attorney-client relationship. Plaintiff asks the Court to assume that Defendants were not Amusement's counsel in the Colonial Transaction. Id. ¶¶100, 109 and 116. Plaintiff admits that it knew BIR and Friedman were Stern's counsel in the Amusement transaction and that Amusement had its own in-house counsel working on the deal. Id. ¶35. Therefore, Amusement had no basis for believing that Defendants owed it any duty in the transaction or that it could rely on any alleged statement or omissions without verifying them. "'It is a well-settled principle that neither a party nor his attorney may justifiably rely on the

legal opinion or conclusions of his or her adversary's counsel.'" I.L.G.W.U. Nat'l. Retirement Fund v. Cuddlecoat, Inc., No. 01 Civ. 4019, 2004 WL 444071, at *3 (S.D.N.Y. Mar. 11, 2004)(quoting Aglira v. Julien & Schesinger, P.C., 214 A.D.2d 178, 185, 631 N.Y.S.2d 816, 820 (1st Dep't 1995)). Accord Matsumura, 542 F.Supp.2d at 256 ("Courts have routinely held that it is unreasonable for a party 'to rely on the advice of adversary counsel ... when both parties are aware that adverse interests are being pursued.'")(quoting Kregos v. Associated Press, 3 F.3d 656, 665 (2d Cir. 1993)); Karsanow v. Kuehlewein, 232 A.D.2d 458, 458-59, 648 N.Y.S.2d 465, 466 (2d Dep't 1996)("[T]he plaintiffs' allegation that they consented to the inclusion of a non-recourse clause in the extension agreements because Gulino assured them that such a provision was 'customary' is insufficient to establish a claim for fraud. The plaintiffs could not reasonably rely on the legal opinions or conclusions of their adversary's counsel.").

### B.    Failure to Plead Scienter

"A common law fraud claim in New York requires the plaintiff to plead scienter." In re Wachovia Equity Securities Litigation, 753 F.Supp.2d 326, 379 (S.D.N.Y. 2011); Saltz v. First Frontier, LP, No. 10 Civ. 964, 2010 WL 5298225, at *8 (S.D.N.Y. Dec. 23, 2010)("Both common law fraud and fraudulent concealment require the Plaintiff to plead scienter"); Allianz Risk Transfer v. Paramount Pictures Corp., No. 08 Civ. 10420, 2010 WL 1253957, at *9 (S.D.N.Y. Mar. 31, 2010).   Scienter is a "mental state embracing intent to deceive, manipulate, or defraud." Ernst & Ernst v. Hochfelder, 425 U.S. 185, 193 n. 12 (1976); Whalen v. Hibernia Foods PLC, No. 04 Civ. 3182, 2005 WL 1799370, at *2 (S.D.N.Y. Aug. 1, 2005).   "The scienter element for common law fraud 'is essentially the same as that under federal securities laws.'" In re Wachovia Equity Securities Litigation, 753 F.Supp.2d at 379 (quoting Saltz v. First Frontier, 2010 WL 5298225, at *8).   There are two ways in this Circuit that a plaintiff can plead scienter:

"(a) by alleging facts to show that defendants had both motive and opportunity to commit fraud, or (b) by alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness." <u>Kalnit v. Eichler</u>, 264 F.3d 131, 138 (2d Cir.2001)(citations and quote marks omitted); <u>Whalen v. Hibernia Foods PLC</u>, 2005 WL 1799370, at *2.

Plaintiff makes only conclusory allegations of Friedman's alleged conscious misbehavior or recklessness.  For example, Plaintiff alleges that Frenkel, who has been indicted, claims that during a July 12 phone call between Friedman and Frenkel, Friedman orally authorized the release of the money, which has nothing to do with fraud.   Bayne Decl. Ex. 1 ¶¶34, 48. Amusement alleges, however, that days earlier it explicitly instructed Frenkel that such authorization had to come from Allen Alevy or Allen Sragow and it could only be done in writing.  <u>Id.</u> ¶46.  Thus, there was no basis for Frenkel to rely on the alleged oral release which contradicted Amusement's express written instructions given earlier.  Plaintiff also alleges that Friedman's July 13 email to Amusement asking it to release the escrow because he had received the executed documents Amusement had demanded constituted an "authorization" for Frenkel to release Amusement's funds from escrow.  <u>Id.</u> ¶49.  Plaintiff does not allege how Frenkel could have reasonably construed the email to be an authorization to release the money from escrow in contradiction of his written instructions.

Plaintiff's conclusory allegations that Friedman falsely assured it that the proposed structure would "protect" Amusement and leave it in a "more secure position than Citigroup" (<u>id.</u> ¶¶42, 56), is completely preposterous and undermined by their admission that when they asked Friedman for a copy of the Citigroup documents, he said did not have them. <u>Id.</u> ¶57.  It is not plausible that an experienced and sophisticated real estate investor like Amusement could have

24

believed that its $13 million loan would not be subordinated to the secured loans of $126 million being made by Citigroup.

Plaintiff instead attempts to meet the scienter requirement by alleging that Friedman's motivation to deceive was that he was "under great pressure from BIR to generate revenue" and that "if the deal fell apart he would have a much harder time generating business and BIR would have a much harder time getting paid." Id. ¶41. Plaintiff, however, admits that none of their $13 million was received by Friedman or BIR after it was released from escrow except BIR's legal fees. Id. ¶49.

Allegations that BIR or Friedman were motivated to commit fraud in order to receive legal fees due in the transaction do not satisfy the requisite pleading requirement that Defendants possessed the intent to commit fraud.  Plaintiff fails to allege that BIR or Friedman would receive any benefit from this alleged fraud other than to collect legal fees for the services rendered in connection with the transaction.  As has been recently reaffirmed, "[c]ourts in this district, however, have found that normal transactional costs are insufficient to establish motive." Alki Partners, L.P. v. Vatas Holding GmbH, 769 F.Supp.2d 478, 494 (S.D.N.Y. 2011) (dismissing fraud claim because the "Complaint fails to allege any other motive or opportunity for Ruiz or Credit Suisse to participate in the fraud beyond normal transactional fees"); Whalen v. Hibernia Foods PLC, 2005 WL 1799370, at *2 (allegations that a professional committed securities fraud in order to retain a current client were insufficient to show motive and opportunity because the court will not assume that a professional will risk the ruination of his professional reputation merely to earn a fee); Duncan v. Pencer, No. 94 Civ. 0321, 1996 WL 19043, at *9-10 (S.D.N.Y. Jan. 18, 1996)(same); In re College Bound Consolidated Litig., No. 93 Civ. 2348, 1995 WL 450486, at *12 (S.D.N.Y. July 31, 1995)(finding an allegation that

defendant was motivated to commit fraud by the desire to receive professional fees for services insufficient to establish that he possessed the required scienter to commit fraud); <u>Friedman v. Arizona World Nurseries Ltd.</u>, 730 F.Supp. 521, 532 (S.D.N.Y.1990) ("It would defy common sense to hold that the motive element ... would be satisfied merely by alleging the receipt of normal compensation for professional services rendered").

Thus, Amusement has failed to allege reasonable reliance or scienter with the degree of particularity required by Rule 9(b).  It has, therefore, failed to state a claim on which relief can be granted in the Fourth, Fifth, Sixth and Seventh Claims for Relief alleged in the Amended Complaint.

## CONCLUSION

For all the foregoing reasons, it is respectfully submitted that: (a) the Second through Seventh Claims for Relief should be dismissed as duplicative of the first Claim for legal malpractice, (b) the Second Claim for Relief should be dismissed for failure to state a claim upon which relief can be granted, (c) the Fourth through Seventh Claims for Relief should be dismissed for failure to state a claim upon which relief can be granted, and (d) leave to replead again should be denied as futile.

Dated:   June 13, 2012
       New York, NY

Respectfully submitted,

KAVANAGH MALONEY & OSNATO LLP

By  _James J Maloney_

    James J. Maloney
Attorneys for Defendant Buchanan Ingersoll & Rooney PC
415 Madison Avenue
New York, NY 10017
212-207-8400

26